**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES E. BEDEKER, SALLY BEDEKER and FIRST MIDWEST TRUST COMPANY, Trustee Under the Trust #6243 dated December 18, 1997, ) ) ) ) ) | | |
| Plaintiffs, ) ) | | |
| v. ) ) | No. | 07 C 6014 08 C 1711 |
| UNITED STATES OF AMERICA, CHARLES F. CONNOR, ACTING SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, FARM SERVICE AGENCY, NATURAL RESOURCES CONSERVATION SERVICE, AND THE UNITED STATES DEPARTMENT OF AGRICULTURE, ) ) ) ) ) ) ) ) ) | | Judge Rebecca R. Pallmeyer |
| Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

In 1998, Plaintiffs James and Sally Bedeker purchased a tract of approximately 600 acres of farmland in Grundy County, Illinois. Eight years earlier, the Natural Resources Conservation Service ("NRCS"), a federal agency within the United States Department of Agriculture ("USDA"), had determined that approximately eleven acres of the farm consisted of unconverted wetlands protected by federal law from being developed or otherwise cultivated. An NRCS conservationist met with the Bedekers in late 1998 and informed them that they had converted several acres of protected wetlands; he explained by letter that this activity jeopardized their right to farm program benefits. In response, the Bedekers agreed they would not farm the land and would instead plant the area with grasses, in exchange for which they would retain their eligibility for farm benefits. In 2006, NRCS reviewed new digital imagery and found that not only had the Bedekers farmed the wetlands area, they had cleared and planted crops on additional land designated as wetlands. In extensive administrative proceedings, the Bedekers challenged the determination that the areas were in fact wetlands and also argued that

any actions they may have taken were performed in good faith. These arguments—as well as a due process argument—were rejected on administrative review, and the Bedekers were ordered to repay the farm benefits they had received from the federal government since 1998. Plaintiffs now seek review of the administrative determination under the Administrative Procedures Act, 5 U.S.C. §§ 701-06 ("APA"). For the reasons that follow, Plaintiffs' appeal is denied and the agency's determination is affirmed.

## FACTUAL BACKGROUND

Under the "Swampbuster" provisions of the Food Security Act of 1985, 16 U.S.C. §§ 3801 *et seq.*, farmers who produce a crop on converted wetland lose their eligibility for federal farm benefits. 16 U.S.C. § 3821(a), (b). In addition, the act of converting a wetland itself renders an individual ineligible for farm benefits. *Id.* § 3821(c). The Swampbuster provisions do contain certain exemptions that excuse wetland conversion activities, however, including exemptions for individuals who acted in good faith and for individuals whose actions had only a minimal effect on the wetlands. *Id.* § 3822(f), (h). The responsibility to administer the Swampbuster provisions rests primarily with two USDA agencies: the NRCS and the Farm Service Agency ("FSA"). NRCS is the scientific agency, making necessary technical determinations, developing restoration and mitigation plans, and monitoring compliance with the statute. *Id.* § 3822(j); *see also* 7 C.F.R. § 12.6(c). The FSA, acting through state FSA committees and county office committees ("COC"s), is the agency charged with enforcement of the statute and is primarily responsible for determining violations and benefit eligibility. 7 C.F.R. § 12.6(b).

On April 25, 1990, the NRCS completed a "Highly Erodible Land And Wetland Conservation Determination" that identified two wetlands areas covering approximately eleven acres on an area of land known by the USDA as Farm Serial Number ("FSN") 3103, Tract 2663 ("Tract 2663"). (A-155,

193.)[1] Shortly thereafter, NRCS notified the then-owner of the property of this determination. (A-155.) In 1998, the Bedekers purchased the beneficial interest in two parcels of farmland, which included Tract 2663, totaling approximately 600 acres, in Grundy County, Illinois.[2] (A-8-10.) On July 31, 1998—and at least five more times over the next eight years—Plaintiffs filed a Form AD-1026, entitled "Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC) Certification" ("AD-1026"), with NRCS. (A-106, 257-303.) On the forms, signed by James Bedeker, Plaintiffs stated that they did not conduct and did not plan to conduct any farming activities on the portions of their land designated by NRCS as wetlands. (A-267.) Attached to the AD-1026 forms were AD-1026As, reports prepared by USDA that listed several tracts on the Bedekers' land, including Tract 2663, that contained areas designated as wetlands. (A-269.)

In November 1998, vocal concern by area residents regarding activity on the Bedekers' farm prompted Paul Youngstrom, an NRCS conservationist, to visit the Bedekers at their farm to examine their filling and clearing activities. (A-252.) After examining the activity and the corresponding wetland inventory maps, Youngstrom determined that the Bedekers had disturbed wetlands. (*Id.*) On December 21, 1998, Youngstrom mailed a letter to the Bedekers that described the circumstances of their meeting in November at the Bedeker farm and the agency's wetland determination. In pertinent part, the letter stated:

> From my observations, a number of trees are being cleared, stumps removed and then burned. In reviewing USDA's wetland inventory maps, these areas are shown to be wetlands. Some of this work is being done to maintain some existing drainage ways. However, some of this work also appears to be clearing of wetlands to improve drainage and possibly allow more land to be cropped. If this is actually the case, USDA views this activity as the conversion of wetlands. The Farm Bill of 1996 prohibits anyone converting wetlands to be eligible for any farm program payments, loans, insurance, or cost-share payments.

---

[1] Consistent with the convention adopted by both parties in their briefs, citations to the record beginning with the letter "A" refer to NAD Case No. 2007E000453, and citations beginning with the letter "B" refer to the record for NAD Case No. 2007E000867.

[2] Plaintiff First Midwest Trust Company, Trustee Under Trust # 6243, holds legal title to the farmland in question. (Pl.'s Br. at 2.)

(*Id.*) Although the letter does not conclusively affirm that the Bedekers had converted wetlands, Youngstrom communicated that the work "appears to be clearing of wetlands" and that the FSA "may suspend any payments that you have coming until we can understand what you are doing out there, whether any wetlands have been converted, and if so, how the situation may be reconciled." (*Id.*)

On August 3, 1999, Youngstrom notified the FSA of the Bedekers' wetland conversion activity (A-247.) In his letter to the FSA, Youngstrom documented his discussions with Mr. Bedeker:

> [Mr. Bedeker] told us about the work that had been done earlier, and we informed him that he was out of compliance since he had cleared trees in a wetland and planted a crop. He stated that he didn't realize this was a problem and wanted to know how to remedy the situation. Mr. Bedeker has agreed to not farm the new acreage, and he hasn't this year. He plans to seed it to some permanent grass and keep it out of production. Therefore, Mr. Bedeker is not out of compliance for farm program benefits for 1999.

(*Id.*) Subsequent agency decisions make clear that Youngstrom erred in his determination that by keeping the land out of production and replanting it with permanent grass, the Bedekers would be in compliance. (A-108, 159.) Under 16 U.S.C. §3821(c), the mere conversion of wetlands renders an individual ineligible for farm program benefits.

In 2006, as part of a routine FSA status review conducted to update the department's digital imagery, the FSA and NRCS reviewed apparent wetland conversion activity, including the planting of crops, on the Bedekers' farm. (B-127.) NRCS determined that Plaintiffs had converted approximately 8.5 acres of wetlands on Tract 2663. (A-156.) On April 24, 2006, NRCS conducted a wetland determination field investigation for Tract 2663 and found wetland hydrology and hydric soil indicators, and concluded, based on a comparable offsite location, that the natural vegetation of the cleared areas was hydrophytic.[3] (*Id.*) NRCS also determined that .4 acres of land that Plaintiffs leased from a third party were also converted wetlands. (A-106.) A few weeks later, NRCS informed the Bedekers that

---

[3] Under the Swampbuster provisions, the term "wetland" refers to land that: "(A) has a predominance of hydric soils; (B) is inundated or saturated by surface or groundwater at a frequency and duration sufficient to support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions; and (C) under normal circumstances does support a prevalence of such vegetation." 16 U.S.C. § 3801(a)(27).

it had made a preliminary technical determination that Tract 2663 contained converted wetlands.  (A-156.)  The Bedekers failed to request either mediation or a field visit within thirty days of the preliminary technical determination, and the determination became final.  (A-239-42.)

The appeals process for wetlands determinations generally follows the following steps.  After the technical determination becomes final, the individual may appeal to the COC, which, as noted above, is a subdivision of the state Farm Service Agency within the USDA.  7 C.F.R. § 780.6.  If he loses at the COC level, the individual usually takes his next appeal to the state FSA before appealing to the National Appeals Division of the USDA ("NAD").  *Id.*  In certain circumstances, however, he may appeal directly to the NAD.  *Id.*  Within the NAD, the appealing party is entitled to a hearing, after which the hearing officer makes an initial determination, and that determination is appealable for a Director's review.  *Id.* §§ 11.8, 11.9.  After the director makes her determination, the matter is appealable to the United States District Court.  7 U.S.C. § 6999.

On July 13, 2006, the Bedekers were notified by the FSA that the wetland determination by the NRCS, dating back to the clearing and removal of trees by the Bedekers on Tract 2663 in 1998, rendered them ineligible for farm program benefits for all preceding years, beginning in 1998.  (A-156.) Plaintiffs then initiated two separate administrative actions, which progressed through the appeals process independent of one another.  First, the Bedekers appealed the eligibility decision to the COC, contending that the areas in question were improperly designated as wetlands.  (A-156-57.)  Second, the Bedekers requested a good faith determination that would exempt them from the penalties imposed by the Swampbuster statute.  (A-156.)

In support of their appeal of the wetland determination, the Bedekers hired Valerie Jakobi, an environmental scientist.  (A-201.)  Although a Certified Professional in Erosion and Sediment Control, Jakobi is not certified by the USDA, nor is she trained to perform a "Minimal Effects Evaluation" according to USDA guidelines.  (A-160-61, 201-03.)  After reviewing the site, aerial photos, and mapped wetland resources, Ms. Jakobi concluded that the area may not have contained wetlands at

5

all and, even if the area had contained wetlands, the Bedekers' violation had a minimal effect. (A-201-03.) In response, on January 17, 2007, the NRCS State Conservationist issued a report agreeing with the earlier NRCS determination that Tract 2663 contained converted wetlands. (A-157.) On March 16, 2007, the COC upheld the NRCS determination that the property contains wetlands and affirmed the FSA's determination that the Bedekers were ineligible for benefits dating to crop year 1998. (*Id.*)

Plaintiffs appealed the COC decision to the NAD. After a June 12, 2007 telephonic hearing, at which Jakobi and NRCS experts testified, the hearing officer issued an opinion upholding FSA's decision to deny benefits. (A-109-10, 158-59.) Plaintiffs then filed a request for Director review, arguing that Tract 2663 did not contain wetlands; that if the tract did contain wetlands, Plaintiffs caused no more than a minimal effect on the wetlands[4]; and that Plaintiffs' due process rights were violated at the June 2007 telephonic hearing when the hearing officer permitted NRCS representatives to answer questions directed by Plaintiffs' attorney to different NRCS witnesses. (A-159-61.) M. Terry Johnson, a Deputy Director, upheld the hearing officer's determination, finding that Plaintiffs caused more than a minimal effect on land that would have been wetlands but for Plaintiffs' actions. (*Id.*) Johnson also rejected Plaintiffs' due process arguments, finding that the purpose of the hearing—for the officer to obtain all relevant facts—was still satisfied and that Plaintiffs had sufficient opportunities to question all witnesses. (A-161.)

Concurrently with this appeals process, the Bedekers also filed a request for a finding of good faith with the Grundy COC, asserting that they did not act with the intent to violate the Swampbuster provisions and instead believed they were in compliance. 7 C.F.R. § 12.5(b)(5)(i). Such a

---

[4] On April 2, 2007, approximately ten months after NRCS's technical determination became final, Plaintiffs first presented their "minimal effects" argument in their written submissions to the NAD. (A-174.) The NAD hearing officer concluded that the Bedekers were required to request a "minimal effects" determination within thirty days of the preliminary technical determination in May 2006; Plaintiffs claim any failure on their part to do so was the result of NRCS's failure to notify them that they needed to make such a request. (A-109.) In any event, NRCS conducted a minimal effects evaluation on Plaintiffs' land and concluded that Plaintiffs were not eligible for a minimal effects exemption. (*Id.*)

determination would have resulted in the Bedekers retaining their benefits. 16 U.S.C. § 3822(h). The COC denied their request, finding that the correspondence with Youngstrom and the numerous HELCs the Bedekers had filed over the years demonstrated that they were aware of the regulations and did not act in good faith. (B-167-68.) The Illinois State FSA Committee affirmed this determination on appeal, as did an NAD hearing officer. (B-129, 290.) Finally, Deputy Director Johnson affirmed these findings, concluding that the Bedekers' prior knowledge of the presence of wetlands on their property foreclosed the possibility of good faith relief. (B-118-19.)

The Bedekers filed two lawsuits in United States District Court, seeking review of the two NAD decisions. The lawsuits were consolidated into the action now before the court.

## **DISCUSSION**

This court has jurisdiction pursuant to 7 U.S.C. § 6999, which permits courts to review final determinations of the National Appeals Division pursuant to the terms of the APA, 5 U.S.C. §§ 701-06. Under the APA, a court must uphold an agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This narrow review is "searching and careful," but is ultimately limited to determining whether the agency's determination relied on the proper factors that Congress intended and whether the determination is a clear error of judgment. *Environmental Law & Policy Ctr. v. U.S. Nuclear Regulatory Comm'n*, 470 F.3d 676, 682 (7th Cir. 2006) (quoting *Highway J Citizens Group v. Mineta*, 349 F.3d 938, 952 (7th Cir. 2003)); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This standard "presumes that agency actions are valid as long as the decision is supported by a rational basis." *White Eagle Coop. Ass'n v. Conner*, 553 F.3d 467, 474 (7th Cir. 2009) (quoting *Pozzie v. U.S. Dep't of Housing & Urban Dev.*, 48 F.3d 1026, 1029 (7th Cir. 1995)) (internal quotation marks omitted). Accordingly, a court may not substitute its own judgment for that of the agency. *See, e.g.*, *White Eagle Coop.*, 553 F.3d at 475; *Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947, 953 (7th Cir. 2000). Furthermore, when the agency's decision is based in part on the opinion of its own qualified experts,

it must have discretion to rely on those experts' reasonable opinions "even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Nat'l Res. Council*, 490 U.S. 360, 378 (1989).

The Bedekers allege several defects in the NAD's final determinations. First, the Bedekers object to the final wetland determination made by NRCS and assert it is contrary to the manifest weight of the evidence. Alternatively, to the extent the court concludes that the wetlands determination did not violate the APA, the Bedekers argue that any effect was minimal and therefore exempted by the statute. Next, the Bedekers maintain that although wetlands may exist on their property, any actions they took in violation of the statute were done in good faith. Finally, Plaintiffs contend that the agency violated their procedural due process rights by denying their opportunity for a full and complete cross-examination of government witnesses. The court will consider each argument in turn.

## I. Wetlands Determination

Plaintiffs first challenge the Deputy Director's determination that Tract 2663 was in fact a wetland. Plaintiffs rely upon the testimony of Valerie Jakobi, their expert, who stated that she saw no evidence in 2006 that would show that the tract in question fell under that definition. Specifically, Jakobi noted that the area was not wet despite recent heavy rainfall; that no wetland species dominate in the area; and that the soils report did not show the tract to be any different from the adjacent, non-wetland areas. (A-31-32.)

Plaintiffs' reliance on their expert is misplaced, however, as an agency is entitled to rely upon the reasonable opinions of its own experts. *Marsh*, 490 U.S. at 378. Here, Jakobi's testimony does not seriously call into question the wetland determination made by NRCS, which provided the basis for the NAD decision. Congress provided the USDA with the authority to determine the areas that are wetlands, 16 U.S.C. § 3822(a)(1), and this authority is delegated by regulation to NRCS. 7 C.F.R. § 12.30(a)(3). In 1990, NRCS performed a "Highly Erodible Land and Wetland Conservation Determination" on the tract in question and determined that it was wetlands. (A-105, 155.) The record

does not clearly state how exactly the 1990 determination was made, but the NRCS returned in 2006 and 2007 to conduct a review of the wetlands determination, and the NRCS soil specialist determined that the contested areas contained hydric soils. Furthermore, NRCS determined that the reason for the lack of wetland vegetation was that Plaintiffs had cultivated the tract for nearly a decade. (A-158-59.) Contrary to Jakobi's contention that the NRCS's reliance on these 2007 studies make it impossible to determine the condition of the tract in 1998, the applicable regulations explicitly permit NRCS to determine whether hydrophytic vegetation would "typically exist[] in the local area . . . under non-altered hydrologic conditions." 7 C.F.R. § 12.31(b)(2)(ii). Plaintiffs' expert did not seriously question these findings by NRCS: as the NAD noted in its opinion, Jakobi is not certified by USDA or NRCS to conduct wetland certifications, and the NRCS soil specialist showed that the criteria employed by Jakobi were not accepted criteria under the regulations. (A-160-61, 107.) Given the findings of the NRCS, Plaintiffs thus failed to establish that NAD's determination was either based on improper factors or the result of a clear error in judgment. *Environment Law & Policy Ctr.*, 470 F.3d at 682.

The Bedekers argue, in the alternative, that even if their land did contain wetlands, any effect their activities had on the wetlands-designated area was minimal. The statute specifically exempts any action that has a "minimal effect on the functional hydrological and biological value of the wetlands." 16 U.S.C. § 3822(f)(1). The regulations envision that the landowner will request the "minimal effects" determination prior to taking any potentially converting activities. 7 C.F.R. § 12.31(d) ("A request for [a 'minimal effects'] determination *will* be made prior to the beginning of activities that would convert the wetland.") (emphasis added). The Bedekers, however, did not request a "minimal effects" determination until after the conversion had taken place, so the burden rests on them "to demonstrate to the satisfaction of NRCS that the effect was minimal." *Id.* After reviewing Plaintiff's evidence, including Jakobi's conclusions regarding the minimal effects, NRCS determined that Plaintiffs' actions had more than minimal effects and the statutory exemption did not apply. (A-161.) The NAD denied Plaintiffs relief under the minimal effects exemption based solely on NRCS's conclusion. (*Id.*) Although

the NAD did not independently examine the merits of this conclusion, it did outline the bases for NRCS's conclusion, including NRCS's determination that the lack of several indicia necessary to making a wetlands determination—which Jakobi relied upon in drawing her "minimal effects" conclusion—was the result of Plaintiffs' actions on the land over the last ten years. (A-159.) NRCS also found that Jakobi's conclusions were based on some factors that are irrelevant to a wetlands determination, such as the wetness of the area or the adjacency of the area to a sluice. (*Id.*) In their brief before this court, Plaintiffs merely reiterate the reasons for Jakobi's conclusion that any actions taken to the designated area had but minimal effects, but fail to clearly explain what errors they believe NRCS made. In light of the deference the court owes the agency when the agency relies on its own experts' reasoned opinion, the court cannot conclude that the NAD abused its discretion in relying on the NRCS determination rather than those of Plaintiffs' unqualified expert in determining that Plaintiffs' actions had more than a minimal effect on the designated wetlands area.

## II. Good Faith

Next, the Bedekers maintain that their clearance of the wetlands was done in good faith. The statute provides a good faith exemption for individuals who violate the Swampbuster requirements if the agency determines that the violator "acted in good faith and without intent to violate [the statute]." 16 U.S.C. § 3822(h)(1). The related regulations provide that the good faith exemption is available if FSA determines that the landowner did not intend to convert a wetland and is implementing all the components of an agreed-upon mitigation plan.[5] 7 C.F.R. § 12.5(b)(5). Plaintiffs suggest that they had

---

[5] Plaintiffs also cite another regulation in support of their claim for a good faith exemption. By its own terms, however, this regulation, 7 C.F.R. § 718.303, applies only when an individual relies in good faith on the "advice of an authorized representative of a County or State FSA Committee." 7 C.F.R. § 718.303(a). The letter Plaintiffs claim to have acted in reliance upon was sent by NRCS, not an FSA Committee, and the regulation therefore does not apply. In addition, the regulation also explicitly does not apply when individuals act "in reliance on their own misunderstanding or misinterpretation of program provisions, notices, or information," which, as is shown in more detail below, describes what happened here. *Id.* § 718.303(b). Therefore, the court considers Plaintiffs' good faith argument in the context of 16 U.S.C. § 3822(h)(1) and 7 C.F.R. § 12.5(b)(5).

10

no intent to violate any federal laws for the simple reason that they were unaware that their land contained protected areas. Even assuming that the good faith exemption was meant to encompass an ignorance defense—a theory the NAD hearing officer rejected—Plaintiffs' contention fails for two reasons. First of all, Plaintiffs filed numerous AD-1026 forms that laid out the applicable rules regarding the development of wetlands areas; attached to those forms were AD-1026As, which listed protected areas within Plaintiffs' land, and Plaintiffs consistently misrepresented on those forms that they were not clearing or cultivating those areas. Second, Plaintiffs' conversations and correspondence with Youngstrom demonstrate that they were well aware of the wetlands issue concerning their land.

Plaintiffs also suggest that two related communications between NRCS and James Bedeker provide support for the good faith argument. First, Plaintiffs claim that a December 1998 letter from NRCS informed the Bedekers "that they were not in violation under the Act." (Pl.'s Br. at 12.) This assertion is plainly defeated by the contents of the letter, which states, among other things: "we observed an area that was shown as wetland on our wetland inventory maps that you had filled with soil"; "some of this work also appears to be clearing of wetlands"; "I would suggest you do no more work in the wetland areas." (B-218-19.) This language cannot reasonably be construed as evidence that NRCS thought the Bedekers were compliant with the applicable wetlands laws. Indeed, if NRCS thought the Bedekers were compliant, it would have had no need to inform them that the "Farm Bill of 1996 prohibits anyone converting wetlands to be eligible for any farm program payments."[6] (*Id.*) The regulation specifically lists as one of the factors relevant to a good faith determination whether "NRCS had informed the person about the existence of a wetland on the subject land." 7 C.F.R. § 12.5(b)(5)(ii)(B). Not even considering the discussion that took place between the NRCS representative and the Bedekers, the letter alone establishes that the Bedekers knew of the existence

---

[6] Nor are Plaintiffs correct that NRCS did not make a formal wetlands determination until 2006. To the contrary, on April 25, 1990, NRCS determined that the tract in question contained undisturbed wetlands and notified the then-owner of the land. (A-155.) NRCS thus made the wetlands determination well before Plaintiffs owned the land, and that determination has not been altered in any meaningful way since.

of wetlands on their property. Plaintiffs could not have relied upon this letter to claim that any wetlands clearing operations they performed were done in good faith.

The second communication Plaintiffs identify as supporting a good faith defense was the letter sent by Youngstrom to the FSA, informing them of a conversation he had with James Bedeker in which Youngstrom informed Bedeker that he was not out of compliance because he had agreed not to farm the cleared wetlands and instead to seed it to some permanent grass. (B-84.) As consistently noted during Plaintiffs' appeals process, this advice was incorrect. (*E.g.*, A-159.) If the Plaintiffs had relied upon this communication and kept the area in question uncultivated and planted only with grass, Plaintiffs might have a case that the good faith exception should apply to their conduct. In fact, however, Plaintiffs did not follow this plan and planted crops on the area in question. The evidence does not support the notion that the Bedekers acted in good faith reliance upon any communication with NRCS. The court therefore finds no basis on which it can conclude that the NAD made a clear error of judgment in violation of the APA.

## III.    Due Process

Finally, Plaintiffs claim that their due process rights were violated at the June 2007 teleconference when the hearing officer permitted an NRCS official to answer a question that had been directed to another witness. Plaintiffs' claim is based on the following exchange:

Mr. Brankin (Plaintiffs' counsel):
>    Was [the NRCS procedure for a "minimal effects evaluation"] provided to the appellants in this case?

Ms. Starr (NRCS):    It's my understanding that the request for minimal effects was not a formal request.

| | |
|---|---|
| Mr. Brankin: | I'm simply asking you a yes or no question, ma'am. Was the NRCS procedure for minimal effects evaluation provided to the appellants in this matter? |

*Mumbling in background*

| | |
|---|---|
| Male voice: | If I could address that. |
| Mr. Brankin: | No, I'm asking Ms. Starr, she's the one that prepared the evaluation. |
| Ms. Starr: | Sir, I divert the question to Mr. Hubbert. |
| Mr. Brankin: | So you don't know. Is that your answer? |
| Male voice: | We are in the process of answering. Go ahead, Jon. |
| Mr. Brankin: | Mr. Hicks, I've got to object. I asked the lady a question who prepared this report. She either knows or doesn't know. |
| Mr. Hicks (hearing officer): | Okay, I'm going to go ahead and let them answer the question so I can gain the information I need. So go ahead, sir. |
| Mr. Hubbert (NRCS): | Mr. Hicks, that information was provided within the agency record as well as the agency exhibits that they currently have in front of them. It was not provided, to my knowledge, before that point. |

(Teleconference at 2:43:12-2:44-39, A-629-31.) Citing no cases or other authority, Plaintiffs urge that Hicks' decision to allow Hubbert to answer the question instead of Starr constitutes a violation of Plaintiffs' due process rights because it "prejudiced the Bedekers' ability to explore this point and fully present their defense." (Pl.'s Reply at 8-9.)

Plaintiffs have failed to establish a due process violation. In the context of administrative proceedings, "only egregious administrative irregularities may amount to constitutional violations." *Sokolov v. Gonzales*, 442 F.3d 566, 569 (7th Cir. 2006). Once Hubbert responded to the question, over Plaintiffs' counsel's objection, he gave the response that Plaintiffs' counsel undoubtedly wanted to hear: the NRCS procedures were not provided to Plaintiffs prior to their receipt of the agency record. The court presumes that Plaintiffs were interested in this information only to show that because they

13

had no way of knowing the appropriate period of time in which to request a "minimal effects" determination, they should not be prejudiced by their delay in making such a request. If this was indeed their goal, there cannot be any prejudice here, as a different NRCS witness affirmed that Plaintiffs did not receive that information. *Bakarian v. Mukasey*, 541 F.3d 775, 785 (7th Cir. 2008) ("Without prejudice, there is no due process violation."). Of course, the court cannot be certain as to why Plaintiffs thought the information was important; regardless of their reasons, the agency process in this case obviously clears the "egregious irregularity" standard, particularly because it appears Plaintiffs could easily have continued to question Starr about the extent of her knowledge. *See Sokolov*, 442 F.3d at 569. Accordingly, the court must affirm the NAD's determination that the hearing officer conducted the hearing in the "manner most likely to obtain the relevant facts" and that the Bedekers "were provided ample opportunity to question all witnesses." (A-161.) Any suggestion by Plaintiffs that other unspecified due process violations occurred are waived. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' appeal is dismissed and the agency determination is affirmed. Plaintiffs' Motion for a Settlement Conference [23] is denied as moot.

ENTER:

Dated: March 16, 2009

_____
REBECCA R. PALLMEYER
United States District Judge